## In re NEW YORK STATE
## DEPT OF TRANSPORTATION, Petitioner

*In Visa Petition Proceedings*

EAC 96 063 51031

Designated by the Acting Associate Commissioner, Programs,
August 7, 1998

(1) An alien seeking immigrant classification as an alien of exceptional ability or as a member of the professions holding an advanced degree cannot meet the threshold for a national interest waiver of the job offer requirement simply by establishing a certain level of training or education which could be articulated on an application for a labor certification.

(2) General arguments regarding the importance of a given field of endeavor, or the urgency of an issue facing the United States, cannot by themselves establish that an individual alien benefits the national interest by virtue of engaging in the field or seeking an as yet undiscovered solution to the problematic issue.

(3) A shortage of qualified workers in a given field, regardless of the nature of the occupation, does not constitute grounds for a national interest waiver. Given that the labor certification process was designed to address the issue of worker shortages, a shortage of qualified workers is an argument for obtaining rather than waiving a labor certification.

ON BEHALF OF PETITIONER: Jill Nagy
Lee and LeForestier, P.C.
Box 1054
Second Street
Troy, NY  12180

### DISCUSSION

The employment-based immigrant visa petition was denied by the Director, Vermont Service Center, and is now before the Associate Commissioner for Examinations on appeal. The appeal will be dismissed.[1]

The petitioner seeks to classify the beneficiary pursuant to section 203(b)(2) of the Immigration and Nationality Act, 8 U.S.C. § 1153(b)(2), as

---

[1]This decision was originally entered on April 27, 1998. The matter has been reopened on Service motion for the limited purpose of incorporating revisions for publication.

a member of the professions holding an advanced degree. The petitioner seeks to employ the beneficiary as a civil engineer. The petitioner asserts that an exemption from the requirement of a job offer, and thus of a labor certification, is in the national interest of the United States. The director found that the beneficiary qualifies for classification as a member of the professions holding an advanced degree but that the petitioner had not established that an exemption from the requirement of a job offer would be in the national interest of the United States.

Section 203(b) of the Act states in pertinent part that:

(2) Aliens Who Are Members of the Professions Holding Advanced Degrees or Aliens of Exceptional Ability. —

(A) In General. — Visas shall be made available . . . to qualified immigrants who are members of the professions holding advanced degrees or their equivalent or who because of their exceptional ability in the sciences, arts, or business, will substantially benefit prospectively the national economy, cultural or educational interests, or welfare of the United States, and whose services in the sciences, arts, professions, or business are sought by an employer in the United States.

(B) Waiver of Job Offer. — The Attorney General may, when he deems it to be in the national interest, waive the requirement of subparagraph (A) that an alien's services in the sciences, arts, professions, or business be sought by an employer in the United States.

It appears from the record that the petitioner seeks to classify the beneficiary both as an advanced degree professional and as an alien of exceptional ability. The record establishes that the beneficiary holds a Master of Science degree in Civil Engineering (Structures) from Iowa State University and thus qualifies as a member of the professions holding an advanced degree. The issue of whether the beneficiary is also an alien of exceptional ability is moot. The remaining issue is whether the petitioner has established that a waiver of the job offer requirement, and thus a labor certification, is in the national interest.

Neither the statute nor Service regulations define the term "national interest." Additionally, Congress did not provide a specific definition of "in the national interest." The Committee on the Judiciary merely noted in its report to the Senate that the committee had "focused on national interest by increasing the number and proportion of visas for immigrants who would benefit the United States economically and otherwise. . . ." S. Rep. No. 55, 101st Cong., 1st Sess., 11 (1989).

Supplementary information to Service regulations implementing the Immigration Act of 1990 (IMMACT), published at 56 Fed. Reg. 60897, 60900 (November 29, 1991), states:

The Service believes it appropriate to leave the application of this test as flexible as possible, although clearly an alien seeking to meet the [national interest] standard must

> make a showing significantly above that necessary to prove the "prospective national benefit" [required of aliens seeking to qualify as "exceptional."] The burden will rest with the alien to establish that exemption from, or waiver of, the job offer will be in the national interest. Each case is to be judged on its own merits.

Several factors must be considered when evaluating a request for a national interest waiver. First, it must be shown that the alien seeks employment in an area of substantial intrinsic merit. This beneficiary's field of endeavor, engineering of bridges, clearly satisfies this first threshold. The importance of bridges, and their proper maintenance, is immediately apparent. It must be stressed, however, that eligibility is not established solely by a showing that the beneficiary's field of endeavor has intrinsic merit. A petitioner cannot establish qualification for a national interest waiver based solely on the importance of the alien's occupation. It is the position of the Service to grant national interest waivers on a case by case basis, rather than to establish blanket waivers for entire fields of specialization.

Next, it must be shown that the proposed benefit will be national in scope. While the alien's employment may be limited to a particular geographic area, New York's bridges and roads connect the state to the national transportation system. The proper maintenance and operation of these bridges and roads therefore serve the interests of other regions of the country. Moreover, nothing in the record indicates that proper maintenance of New York's transportation infrastructure would have an adverse impact on the interests of other regions.[2] We therefore conclude that the occupation in this case serves the national interest.[3]

The final threshold is therefore specific to the alien. The petitioner seeking the waiver must persuasively demonstrate that the national interest would be adversely affected if a labor certification were required for the alien. The petitioner must demonstrate that it would be contrary to the national interest to potentially deprive the prospective employer of the serv-

---

[2]There may be cases where the benefit is not only purely local, but may even be harmful to the national interest. For example, the construction of a dam may benefit one area while cutting off a crucial water supply to another area.

[3]In reaching this conclusion, we note that the analysis we follow in "national interest" cases under section 203(b)(2)(B) of the Act differs from that for standard "exceptional ability" cases under section 203(b)(2)(A) of the Act. In the latter type of case, the local labor market is considered through the labor certification process and the activity performed by the alien need not have a national effect. For instance, pro bono legal services as a whole serve the national interest, but the impact of an individual attorney working pro bono would be so attenuated at the national level as to be negligible. Similarly, while education is in the national interest, the impact of a single schoolteacher in one elementary school would not be in the national interest for purposes of waiving the job offer requirement of section 203(b)(2)(B) of the Act. As another example, while nutrition has obvious intrinsic value, the work of one cook in one restaurant could not be considered sufficiently in the national interest for purposes of this provision of the Act.

ices of the alien by making available to U.S. workers the position sought by the alien. The labor certification process exists because protecting the jobs and job opportunities of U.S. workers having the same objective minimum qualifications as an alien seeking employment is in the national interest.[4] An alien seeking an exemption from this process must present a national benefit so great as to outweigh the national interest inherent in the labor certification process.

Stated another way, the petitioner, whether the U.S. employer or the alien, must establish that the alien will serve the national interest to a substantially greater degree than would an available U.S. worker having the same minimum qualifications. It is not sufficient for the petitioner simply to enumerate the alien's qualifications, since the labor certification process might reveal that an available U.S. worker has the qualifications as well. Likewise, it cannot be argued that an alien qualifies for a national interest waiver simply by virtue of playing an important role in a given project, if such a role could be filled by a competent and available U.S. worker. The alien must clearly present a significant benefit to the field of endeavor.

With regard to the unavailability of qualified U.S. workers, the job offer waiver based on national interest is not warranted solely for the purpose of ameliorating a local labor shortage, because the labor certification process is already in place to address such shortages. Similarly, the Department of Labor allows a prospective U.S. employer to specify the minimum education, training, experience, and other special requirements needed to qualify for the position in question. Therefore, these qualifications, taken alone, do not justify a waiver of the certification process which takes these elements into account.[5]

Because, by statute, "exceptional ability" is not by itself sufficient cause for a national interest waiver, the benefit which the alien presents to his or her field of endeavor must greatly exceed the "achievements and significant contributions" contemplated in the regulation at 8 C.F.R. § 204.5(k)(3)(ii)(F), Because the statute and regulations contain no provision allowing a lower national interest threshold for advanced degree profes-

---

[4]A limited exception to the minimum requirements rule exists, as set forth in Department of Labor regulations at 20 C.F.R. § 656.21a, (A U.S. college or university seeking to fill a teaching position can establish that the alien was found, through a competitive recruitment and selection process, to be more qualified than U.S. applicants.)  This exception does not apply in this case.

[5]The Service acknowledges that there are certain occupations wherein individuals are essentially self-employed, and thus would have no U.S. employer to apply for a labor certification. While this fact will be given due consideration in appropriate cases, the inapplicability or unavailability of a labor certification cannot be viewed as sufficient cause for a national interest waiver; the petitioner still must demonstrate that the self-employed alien will serve the national interest to a substantially greater degree than do others in the same field.

sionals than for aliens of exceptional ability, this standard must apply whether the alien seeks classification as an alien of exceptional ability, or as a member of the professions holding an advanced degree.

The petitioner's subjective assurance that the alien will, in the future, serve the national interest cannot suffice to establish prospective national benefit. While the national interest waiver hinges on *prospective* national benefit, it clearly must be established that the alien's past record justifies projections of future benefit to the national interest.[6] The inclusion of the term "prospective" is used here to require future contributions by the alien, rather than to facilitate the entry of an alien with no demonstrable prior achievements, and whose benefit to the national interest would thus be entirely speculative.

The petitioner, the New York State Department of Transportation (NYSDOT), has employed the beneficiary since November 1993. The beneficiary's supervisor, Project Engineer Anil Desai, P.E., describes the function of the NYSDOT Structures Division as "the provision of professional engineering services for the rehabilitation, replacement, maintenance and inspection of bridges." Counsel states that the beneficiary's "expertise is in prestressed concrete construction and design of post-tensioning and of curved bridges."

A.M. Shirole, P.E., then Director of Structures and Deputy Chief Engineer at NYSDOT, stated in a November 3, 1995 letter that 60% of New York's bridges contain steel bearings which are susceptible to earthquake damage. The beneficiary "has been involved in detailed seismic analysis using state-of-the-art seismic analysis software." Mr. Shirole observes that recent earthquakes have demonstrated "the need for careful implementation of new guidelines for improving the seismic resistance of bridges." The petitioner has submitted evidence showing that the State of New York has withstood four earthquakes at or above 5.0 on the Richter scale since 1884, as well as numerous smaller earthquakes.

The beneficiary also analyzes and designs curved bridges, which "can provide 10 to 15% economy over a conventional system comprising of straight girders." Mr. Shirole asserted "I am personally aware of the national shortage of the type of expertise [the beneficiary] possesses in the design

---

[6]It should be noted that the alien's past record need not be limited to prior work experience. The alien, however, clearly must have established, in some capacity, the ability to serve the national interest to a substantially greater extent than the majority of his or her colleagues. The Service here does not seek a quantified threshold of experience or education, but rather a past history of demonstrable achievement with some degree of influence on the field as a whole. Academic performance, measured by such criteria as grade point average, cannot alone satisfy the national interest threshold or assure substantial prospective national benefit. In all cases the petitioner must demonstrate specific prior achievements which establish the alien's ability to benefit the national interest.

of curved girder bridges." Knowledge of specialized design techniques would appear to be a valid requirement for the petitioner to set forth on an application for a labor certification. Mr. Shirole's assertion of a labor shortage, therefore, should be tested through the labor certification process.

Mr. Shirole continued:

> 32% of all bridges in the United States are deficient in some manner. . . . As more and more of the bridges that were built in the post world war construction boom reach the end of their service life, the nation's need for expert engineers with experience in structural rehabilitation has already started out pacing their availability, indicating their shortage in the industry's marketplace.

Harold J. Brown, Administrator of the New York Division of the Federal Highway Administration (FHWA), states that "[t]he work of the FHWA is in the national interest, as it will benefit the whole of America in providing a safer and cost-effective traveling way across the nation." Mr. Brown makes no specific assertion about the beneficiary, offering only the general statement that "maintenance of a trained and competent engineering staff by each State DOT is paramount to the success of the Federal Highway program."

The above arguments, and similar testimony from numerous other witnesses, focus largely on the critical state of the bridges and related infrastructure in New York and elsewhere in the United States. It is indisputably true that the nation's bridges play a fundamental role in the transportation system and, by extension, in the economy itself which depends on the transportation of goods and mobility of commuters and tourists. The employer's assertions regarding the overall importance of an alien's area of expertise cannot suffice, however, to establish eligibility for a national interest waiver. The issue in this case is not whether proper bridge maintenance is in the national interest, but rather whether this particular beneficiary, to a greater extent than U.S. workers having the same minimum qualifications, plays a significant role in the preservation and construction of bridges.

Anil Desai asserts that the beneficiary's "qualifications make him ideally suited for the kind of complicated engineering design that is done here." George A. Christian, P.E., Director of the Bridge Design Section at NYSDOT, states that the beneficiary's prior work experience "was a key consideration in our hiring him in 1993." Lowell Greimann, Chair of the Department of Civil and Construction Engineering at Iowa State University, states that the beneficiary's "unique background and experience in the field of bridge rehabilitation by applying techniques such as post-tensioning is a resource that can be applied toward the many bridge projects upcoming in the United States."

Any objective qualifications which are necessary for the performance of the occupation can be articulated in an application for alien labor certifi-

cation; the fact that the alien is qualified for the job does not warrant a waiver of the job offer/labor certification requirement. It cannot suffice to state that the alien possesses useful skills, or a "unique background." As noted above, regardless of the alien's particular experience or skills, even assuming they are unique, the benefit the alien's skills or background will provide to the United States must also considerably outweigh the inherent national interest in protecting U.S. workers through the labor certification process.

P.Y. Manjure, Chief Executive of Freyssinet (India) where the beneficiary worked for two years, states that the beneficiary "had rigorous training in the use and application of the world famous Freyssinet System of Post-tensioning." Ayaz H. Malik, P.E., Chairman of the Bridge Design Committee at NYSDOT, states that the beneficiary "has worked on innovative projects such as segmental arch structures patented by the French company 'Matiere'." It is not clear in what capacity the beneficiary "worked on" the Matiere project; in any event, the beneficiary's involvement with Freyssinet and Matiere, standing alone, does not qualify him for a national interest waiver. Simple exposure to advanced technology constitutes, essentially, occupational training which can be articulated on an application for a labor certification.[7] Special or unusual knowledge or training, while perhaps attractive to the prospective U.S. employer, does not inherently meet the national interest threshold. The issue of whether similarly-trained workers are available in the U.S. is an issue under the jurisdiction of the Department of Labor.

George A. Christian observes that NYSDOT, and other federal and state agencies, are in the process of converting to metric measurements. Mr. Christian notes that the beneficiary's previous experience with metric measurements is aiding in this transition. The beneficiary's knowledge of this system would not rise to the level of being in the national interest for purposes of section 203(b)(2)(B) of the Act, since standard English measurements can be converted to metric though simple and widely available arithmetical formulas. Moreover, the metric system is accepted as the standard throughout most of the industrialized world, and is therefore commonly known among alien engineers. In any event, the employer's need for a worker trained in the metric system can be expressed on an application for a labor certification.

---

[7]The record does not contain any indication that the beneficiary developed the technology for which Matiere holds the patent. An alien's job-related training in a new method, whatever its importance, cannot be considered to be an achievement or contribution comparable to the innovation of that new method. While innovation of a new method is of greater importance than mere training in that method, it must be stressed that such innovation is not always sufficient to meet the national interest threshold. For example, an alien cannot secure a national interest waiver simply by demonstrating that he or she holds a patent. Whether the specific innovation serves the national interest must be decided on a case by case basis.

Reports submitted on appeal reflect substantial cost savings on projects on which the beneficiary worked. The record does not show that these savings are due to the beneficiary's involvement, or that comparable projects executed without the beneficiary incurred significantly higher costs. The reports merely indicated that the projects on which the beneficiary worked could have cost more than they actually did.

A number of the witnesses in this case assert that engineers with the beneficiary's qualifications are in short supply, yet are desperately needed because of the deterioration of U.S. bridges. The petitioner has never clearly explained why the job offer and thus the labor certification requirement should be waived. Given the asserted shortage of qualified engineers with the requisite training, and the evident existence of an offer of permanent employment, the situation appears to correspond closely to the very situation that the labor certification process was designed to address.

Mr. Christian states in a letter that the beneficiary's "training and on-the-job experience becomes all the more important since our engineering staff development is a cost-intensive, time consuming process that affects the productivity and quality of the design process." In fact, documents submitted subsequent to the appeal establish the beneficiary's continued involvement in various projects undertaken by the petitioner. The Service does not dispute that the beneficiary provides valuable services to his employer; at issue here is the effect of such services on the national interest when compared to others in the profession. The Service also does not dispute the advantage to the petitioner of retaining qualified staff rather than training inexperienced, newly hired workers. The contention that no other experienced workers are available, however, should be tested on an application for a labor certification. The petitioner has not shown that it will suffer a substantial disruption in its efforts to maintain New York's bridges and roads if a national interest waiver is not granted and the petitioner is required to test the U.S. labor market through the labor certification process. Furthermore, with regard to experience, the regulations indicate that *ten years* of progressive experience is one possible criterion that may be used to establish exceptional ability. Because exceptional ability, by itself, does not justify a waiver of the job offer/labor certification requirement, arguments hinging on the degree of experience required for the profession, while relevant, are not dispositive to the matter at hand.

Based on the above discussion and a careful review of the record, it is concluded that although the petitioner has shown that the beneficiary is a competent engineer whose skills and abilities are of value to his current employer, the petitioner has failed to establish that a job offer waiver based on national interest is warranted. As is clear from a plain reading of the statute, it was not the intent of Congress that every person qualified to engage in a profession in the United States should be exempt from the requirement of a job offer based on national interest. Likewise, it does not

appear to have been the intent of Congress to grant national interest waivers on the basis of the overall importance of a given profession, rather than on the merits of the individual alien as they relate to the job to be performed. Moreover, the mere fact that an alien may play an important role in the activity to be performed by the petitioner is insufficient to establish eligibility for a job offer waiver based on national interest, since qualified U.S. workers may be available to play a similar role. Nothing in the legislative history suggests that the national interest waiver was intended simply as a means for employers (or self-petitioning aliens) to avoid the inconvenience of the labor certification process. On the basis of the evidence submitted, the petitioner has not established that a waiver of the requirement of an approved labor certification will be in the national interest of the United States.

The burden of proof in these proceedings rests solely with the petitioner. Section 291 of the Act, U.S.C. § 1361. The petitioner has not sustained that burden. Accordingly, the decision of the director denying the petition will not be disturbed.

This denial is without prejudice to the filing of a new petition by a United States employer accompanied by a labor certification issued by the Department of Labor, appropriate supporting evidence and fee.

**ORDER:** The appeal is dismissed.